RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SUSAN F. KUHN; MICHAEL KUHN,

        *Plaintiffs-Appellants,*

     *v.*

SULZER ORTHOPEDICS, INC.,

        *Defendant-Appellee,*

TOMMY JACKS, Individually; TOMMY JACKS, P.C.;
MITHOFF & JACKS, L.L.P.,

        *Appellees.*

No. 06-3576

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-09000—Kathleen McDonald O'Malley, District Judge.

Argued: June 8, 2007

Decided and Filed: August 10, 2007

Before: BATCHELDER and COLE, Circuit Judges; PHILLIPS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Andrew M. Greenwell, HARRIS & GREENWELL, Corpus Christi, Texas, for Appellants. Thomas S. Kilbane, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellees. **ON BRIEF:** Andrew M. Greenwell, HARRIS & GREENWELL, Corpus Christi, Texas, for Appellants. Thomas S. Kilbane, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, David W. Brooks, SHOOK HARDY & BACON, Kansas City, Missouri, Manuel Lopez, SHOOK HARDY & BACON, Houston, Texas, for Appellees.

---

**OPINION**

---

    R. GUY COLE, JR., Circuit Judge. Appellants Susie and Michael Kuhn (collectively, the "Kuhns") appeal the district court's order denying their motion, brought under Federal Rule of Appellate Procedure 4(a)(6), to reopen the time to file an appeal of the district court's order

---

[*] The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

enjoining them from obtaining certain discovery from Appellee Sulzer Orthopedics, Inc. ("Sulzer") and from prosecuting certain claims in their Texas state-court action against their former lawyer, Appellee Tommy Jacks. The Kuhns argue that the district court abused its discretion in denying their motion to reopen because they satisfied all the requirements of Rule 4(a)(6) and their counsel had no duty to monitor periodically the district court's docket for orders affecting the Kuhns's legal rights that they might have wanted to appeal. For the reasons described below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Susie Kuhn is a Texas resident who was an absent class member (i.e., not a named class representative) in a certified settlement class action against Sulzer in connection with allegations that Sulzer's orthopedic hip implants were defective. Kuhn retained Tommy Jacks, a Texas attorney, to represent her against Sulzer.

Numerous lawsuits against Sulzer were filed in state and federal courts throughout the country. These cases were centralized in the Northern District of Ohio on June 19, 2001, by order of the Multi-District Litigation ("MDL") Panel. On May 8, 2002, the district court granted final approval to a negotiated settlement, certified the settlement class, and specified an exclusion date by which all class members who did not wish to be bound by the settlement were required to opt-out.

Jacks advised Kuhn that she could obtain more compensation by remaining part of the class, rather than opting-out and litigating her claims against Sulzer on an individual basis. Although apparently reluctant at first, Kuhn and her husband Michael ultimately took Jacks's advice and agreed to remain part of the class. The Kuhns received $320,000 under the *Sulzer* settlement in connection with two surgeries that Susie had undergone because of Sulzer's defective hip implants. In addition, the Kuhns were entitled to receive additional compensation (up to $800,000) under the *Sulzer* settlement, owing to the extraordinary injuries Susie sustained. Jacks, however, failed to timely file Susie's claim under the settlement's "Extraordinary Injury Fund" ("EIF") and therefore she was barred from obtaining the additional relief to which she was entitled.

Thereafter, the Kuhns retained their current counsel, James Harris, and filed an action against Jacks in Texas state court asserting various claims, including legal malpractice. In addition to failing to timely file Susie's EIF claim, the Kuhns alleged that Jacks breached his duties to represent the Kuhns's *individual* interests, rather than just the interests of the class as a whole. In the course of prosecuting their Texas state-court action against Jacks, the Kuhns sought discovery from non-party Sulzer about the negotiation and implementation of the *Sulzer* class-action settlement. Sulzer, believing that the discovery sought by the Kuhns implicated questions exclusively within the continuing jurisdiction of the MDL district court, filed an emergency motion before the MDL court to enjoin the discovery. The MDL court issued a temporary injunction and scheduled a hearing for August 17, 2005. At the August 17 hearing, the court ruled that the Kuhns could pursue their malpractice claim against Jacks on the theory that he failed to timely file their EIF claim, but could not pursue their various other claims against Jacks "because to do so would: (1) be tantamount to an appeal of this Court's earlier Orders [regarding the *Sulzer* class action] and (2) be in breach of § 15.3 of the Settlement Agreement." (Joint Appendix ("J.A.") 625, 631.) Thus, to the extent that the Kuhns's state-court case against Jacks represented a collateral attack on the MDL court's judgment in *Sulzer*, the MDL court enjoined the prosecution of the Kuhns's state-court claims pursuant to its authority to do so under its prior orders and the All Writs Act, 28 U.S.C. § 1651(a).

The MDL court orally issued its ruling on August 17 and stated that a written, appealable order would follow. On October 6, 2005, the Kuhns filed a motion with the court requesting that it issue its written order so that the Kuhns could proceed with their appeal. On October 18, 2005, the district court did so ("Injunction Order").

Under Federal Rule of Appellate Procedure 4(a)(1), the Kuhns had until November 17, 2005—thirty days from the issuance of the district court's Injunction Order—to file their notice of appeal. However, because Harris, the Kuhns's counsel, did not receive notice of the entry of the district court's Injunction Order, the deadline for filing a notice of appeal passed without any action by Harris. Harris first learned about the Injunction Order on January 6, 2006, when a paralegal in his office discovered the order while reviewing the district court's electronic docket. Accordingly, on January 10, 2006, the Kuhns filed a motion to reopen the time to file an appeal under Federal Rule of Appellate Procedure 4(a)(6). The district court denied that motion on March 14, 2006. *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.* ("*In re Sulzer*"), No. 1:01-CV-9000, 2006 U.S. Dist. LEXIS 10712 (N.D. Ohio Mar. 14, 2006). The district court concluded that "Harris is not entitled to a reopening of the appeal period, because his failure to learn timely of the Court's filing of the *October Injunction Order* is largely of his own making." *Id.* at *13. The court reasoned that (1) pursuant to its first MDL Practice and Procedure Order, Harris had a duty to take the "elementary step" of registering his email address with the court's Case Management/Electronic Case Filing ("CM/ECF") system so that he would obtain email notifications of filings, including the court's orders, *id.* at *10-11; and (2) Harris had an affirmative duty to monitor the docket, especially "where [he] took the step of filing a motion asking the Court to promptly issue the promised ruling." *Id.* at *13.

On April 12, 2006, the Kuhns appealed the district court's denial of their Rule 4(a)(6) motion to reopen and the district court's issuance of the Injunction Order. Sulzer moved in this Court to dismiss the Kuhns's appeal as to the Injunction Order, which we granted on October 18, 2006. Thus, the only question before us is whether the district court erred in denying the Kuhns's motion to reopen.

## II. DISCUSSION

### A.        Standard of Review

We review the district court's denial of the Kuhns's Rule 4(a)(6) motion to reopen the time to appeal under an abuse-of-discretion standard. *Martin v. Straub*, 27 Fed. App'x 337, 338 (6th Cir. 2001) (citing *Nunley v. City of Los Angeles*, 52 F.3d 792, 794 (9th Cir. 1995)). A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

### B.        Merits

1.        *Rule 4(a)(6)*

Rule 4(a)(6) was added to the Federal Rules of Appellate Procedure by amendment effective December 1, 1991. It provides:

> *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:
>
> > (A)        the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;
> > (B)        the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving

party receives notice under Federal Rule of Civil
Procedure 77(d) of the entry, whichever is earlier; and

(C)     the court finds that no party would be prejudiced.

Rule 4(a)(6) "is intended to reduce substantially the risk that any opportunity to appeal will be forfeited by failure to receive notice of the entry of judgment." 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3950.6 (3d ed. 1998).

2.     *The District Court Did not Abuse its Discretion in Denying the Kuhns's Motion to Reopen*

As described above, Rule 4(a)(6) specifies three conditions that must be met before a district court may exercise its discretion to reopen the time to file an appeal. The district court below did not make specific findings as to whether the Kuhns satisfied all these requirements. Appellees, however, do not dispute that the Kuhns did so and, on the record before us, we have no trouble concluding as much: Harris filed an affidavit with the district court stating that he did not receive notice of the district court's entry of its Injunction Order, *see* Fed. R. App. P. 4(a)(6)(A); the Kuhns filed their motion to reopen within 180 days of the issuance of the Injunction Order and within seven days of discovering the entry of the order, *see* Fed. R. App. P. 4(a)(6)(B); and Appellees do not contend that they would be prejudiced if the Kuhns's motion to reopen were granted, *see* Fed. R. App. P. 4(a)(6)(C).

Where the Kuhns have satisfied Rule 4(a)(6)'s express conditions, the only question is whether the district court abused its discretion in nonetheless denying their motion. Importantly, the Kuhns concede that the Rule's permissive language, which states that a district court "may reopen the time to file an appeal" if its conditions are satisfied, means that the district court retains discretion to deny a Rule 4(a)(6) motion even where a movant has complied with all three express conditions. We agree. *See Evans v. United States*, No. 96-1962, 1998 U.S. App. LEXIS 21618, at *8 n.3 (6th Cir. Aug. 28, 1998) (per curiam) (commenting that Rule 4(a)(6) "states that a district court 'may' reopen the time for appeal, not that it must"); *Arai v. Am. Bryce Ranches, Inc.*, 316 F.3d 1066, 1069 (9th Cir. 2003) (holding that "the district court has the discretion to deny a Rule 4(a)(6) motion even when the rule's requirements are met"); *In re Jones*, 970 F.2d 36, 39 (5th Cir. 1992) ("Rule 4(a)(6) allows the district court to grant relief if the specified requirements are satisfied, but the rule does not require the district court to grant the relief, even if the requirements are met.").

Although the Kuhns concede that Rule 4(a)(6) preserves a district court's discretion even where the movant has satisfied the Rule's requirements, they challenge the reasons provided by the district court here in support of its exercise of discretion, namely, that (1) Harris was required to register with the court's CM/ECF system as a condition of his practicing before the district court, and that (2) Harris had a duty to monitor the docket. It is to these issues that we now turn.

(a)     *The District Court's MDL Practice and Procedure Order*

The district court's ruling was premised in part on the conclusion that, where Harris had been admitted *pro hac vice* to practice before the district court, he had an obligation to register for CM/ECF so that he would receive e-mail notifications of the court's or other parties' docket filings. Referring to its Practice and Procedure Order, the district court stated that, "[t]he very first Order this Court entered in this case states that 'Counsel **must** be able to receive notice from the Court via e-mail.'" *In re Sulzer*, 2006 U.S. Dist. LEXIS 10712, at *11 (quoting Practice and Procedure Order).

In his affidavit filed in support of the Kuhns's motion to reopen the time to appeal, Harris admits that he did not register with the district court's CM/ECF system because he "does not have the scanners or software meeting the technical requirements necessary to accomplish electronic filing." (J.A. 250.) Appellees respond that even if Harris lacked the capacity to *file* documents

electronically with the district court, he was still required to register with the CM/ECF system so that he could *receive* e-mail notifications of the court's orders as well as notifications of other parties' electronic filings. Indeed, argue Appellees, there is no excuse for Harris's failure to register where he concedes that he had an e-mail address at which he was able to receive electronic communications.

We agree with Harris that the district court's Practice and Procedure Order did not compel him to register with the court's CM/ECF system. By its very terms, that order applies only to (1) actions originally transferred to the district court by the Judicial Panel on Multidistrict Litigation ("JPML"), (2) tag-along actions transferred to the district court by the JPML, (3) related cases originally or subsequently filed in the district court, and (4) related cases transferred or removed to the district court. (J.A. 264.) The Kuhns's Texas suit does not fit within any of these categories; indeed, the Kuhns appeared in the federal MDL court only because Sulzer filed a motion there to prevent the Kuhns from obtaining certain discovery. Thus, the Kuhns were not bound by the court's Practice and Procedure Order and therefore Harris was not required to register with the court's CM/ECF system as a condition of practicing before the court.

If the district court's exercise of discretion is to be sustained, it must be on the basis of the second reason the court gave for denying the Kuhns's motion.

### *(b)      Harris's Duty to Monitor the Docket*

The district court also held that under the law of this Circuit, "'parties have an affirmative duty to monitor the dockets to inform themselves of the entry of orders they may wish to appeal.'" *In re Sulzer*, 2006 U.S. Dist. LEXIS 10712, at *11 (quoting *Reinhart v. U.S. Dep't of Agric.*, 39 Fed. App'x 954, 956 (6th Cir. 2002) (per curiam)). In *Reinhart*, we dismissed the appeal for not having been timely filed even though the appellant was tardy in part because the clerk mistakenly sent him an order from an unrelated case. *Reinhart*, 39 Fed. App'x at 955-56. We held that because the statutory deadline for filing an appeal was "mandatory and jurisdictional," we had no choice but to dismiss the untimely appeal despite the equities that favored the appellant. *Id.* at 956. Further, we held that the clerk's mailing error did not

> completely excuse Reinhart's untimely notice of appeal, because 'parties have an affirmative duty to monitor the dockets to inform themselves of the entry of orders they may wish to appeal . . . . Therefore, the failure of a court clerk to give notice of entry of an order is not a ground, by itself, to warrant finding an otherwise untimely appeal to be timely.'

*Id.* (quoting *In re Delaney*, 29 F.3d 516, 518 (9th Cir. 1994)); *accord In re Jamison*, No. 93-5259, 1993 U.S. App. LEXIS 31195, at *5 (6th Cir. Nov. 24, 1993) (order) (stating that "each party has an independent duty to monitor the progress of his case").

The Kuhns argue that the district court erred in holding that they had a duty to monitor the docket because such a holding amounts to importing Rule 4(a)(5)'s "excusable-neglect" standard into Rule 4(a)(6). The Kuhns cite to decisions from the Second and Ninth Circuits holding that the concept of excusable neglect is inapplicable to Rule 4(a)(6) and that therefore, although a district court has discretion to deny a Rule 4(a)(6) motion, that denial cannot be based on a party's "failure to learn independently of the entry of judgment during the thirty-day period for filing notices of appeal." *Nunley*, 52 F.3d at 798; *accord Avolio v. County of Suffolk*, 29 F.3d 50, 54 (2d Cir. 1994) (holding that a district court's exercise of discretion "may not be based on a concept of inexcusable [sic] neglect for not having learned of the entry of judgment").

We decline to follow *Nunley* and *Avolio*.  Both cases were decided long before electronic dockets became widely available which, as the district court noted, do not even require an attorney "to leave the seat in front of his computer" to keep apprised of what is happening in his cases.  *In re Sulzer*, 2006 U.S. Dist. LEXIS, at *12.  An interpretation of Rule 4(a)(6) that allowed parties to ignore entirely the electronic information at their fingertips would severely undermine the benefits for both courts and litigants fostered by the CM/ECF system, including ease and speed of access to all the filings in a case.  In addition, such an interpretation would defy common sense:  It might be one thing not to penalize a party who did not learn about the issuance of an appealable order in the bygone days of hiring "'runners' to physically go to the courthouse to check the docket," but here all Harris had to do was register his email address with the district court's CM/ECF system to receive the court's orders.  *Id.*  Failing that, Harris simply had to scan periodically the electronic docket for recent activity.  Indeed, the unreasonableness of Harris's conduct here is evident in that ultimately, he learned about the district court's Injunction Order in precisely this way:  His paralegal checked the online docket and discovered the order.

One further consideration prompts us to conclude that the district court did not abuse its discretion in denying the Kuhns's motion to reopen.  As described above, Harris filed a motion with the district court on October 6, 2005, asking it to enter its written Injunction Order so that the Kuhns could file their appeal.  At this point, had Harris been diligent, he would have regularly consulted the docket to see if the district court had responded to his request and issued its order.  It exceeds the bounds of reason to say that a party who takes the unusual step of asking a court to promptly issue a written order may then disclaim all responsibility for taking any action to see if the request has been honored, especially where, as here, all Harris had to do was check the online docket.

We do not reach the precise contours of a district court's discretion to deny a Rule 4(a)(6) motion when the requirements of the Rule have been satisfied.  We do hold, however, that the district court did not abuse its discretion in denying the Kuhns's motion where their counsel opted not to register his email address with the Court's EM/ECF system and then failed to monitor the electronic docket.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court denying the Kuhns's motion to reopen the time to file their appeal.